UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA NUNN, et al,

        Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al,

        Defendants.

Case No. 96-CV-71416-DT

Honorable John Corbett O'Meara

**FILED**

OCT 28 P2:31

DIST. COURT CLERK
EAST DIST MICH
DETROIT

| | |
|---|---|
| Deborah A. LaBelle  (P31595)<br>Attorney for Plaintiffs<br>Suite 300<br>221 N. Main Street<br>Ann Arbor, Michigan  48104<br>(734) 996-5620 | Frank J. Monticello  (P36693)<br>Assistant Attorney General<br>Attorney for Defendants<br>Corrections Division<br>P.O. Box 30217<br>Lansing, Michigan  48909<br>(517) 335-7021 |

## DEFENDANTS' MOTION FOR FULL
## UNCONDITIONAL DISMISSAL PURSUANT TO THE
## FEBRUARY 19, 2003 STIPULATION BETWEEN THE PARTIES

Defendants, through their attorneys, Michael Cox, Attorney General for the State of

Michigan, and Frank J. Monticello, Assistant Attorney General, file this motion for full

unconditional dismissal with prejudice of this action pursuant to the February 19, 2003

stipulation between the parties, stating in support thereof:

    1.    The parties entered into a "Stipulation for Partial Unconditional Dismissal" of this

action that was filed with the Court on February 19, 2003.  (Attachment 1).  That stipulation

stated in relevant part:

        Based on the Agreement and the stipulation of the parties, the Court entered an
        order of conditional dismissal on August 17, 2000.  On December 5, 2002, the

compliance expert submitted a final report concluding that the Defendants have substantially complied with all of the requirements of the Agreement. **However, because the Defendants are continuing their efforts to staff housing units with female officers pursuant to part IX(A) of the Agreement, that portion of the Agreement remains subject to compliance monitoring for a period not to exceed twelve months.** [Emphasis added.]

2.      Pursuant to the parties' Stipulation for Partial Unconditional Dismissal, the Court entered an Order (Attachment 2) dismissing all aspects of this action except that portion related to part IX(A) of the Agreement, related to staffing housing units with female officers.

3.      The Final Report of the Compliance Expert dated December 3, 2002 (Attachment 3), specifically addressed Section IX of the Settlement Agreement related to staffing and found the Department had complied adding the following comment:

> During the monitoring period, the MDOC has continued to make a good faith effort to limit the assignment of staff in facility housing units to female officers. Their position in the *Everson* case, cited above, is consistent with that announced intention. Since *Everson* is currently on appeal to the Sixth Circuit, the MDOC's efforts are ongoing and, therefore, the monitoring will be extended as to this issue only for not more than two additional sixth month periods.

4.      Oral argument in *Everson v Michigan Dept. of Corrections, et al*, Sixth Circuit Court of Appeals Nos. 02-2028, 02-2033, 02-2084, took place on February 4, 2003 and the parties are awaiting the Court's decision. The essential issue before the Sixth Circuit is whether the District Court erroneously determined that there was no justification for a blanket ban on employment of male corrections officers in the female prisons in Michigan.

5.      Well over twelve months have passed since the parties agreed to the Stipulation for Partial Unconditional Dismissal that specifically provides that that the Agreement remains subject to complaint monitoring for a period **not to exceed twelve months**. Thus, this case should be dismissed completely and unconditionally with prejudice.

2

6.    Defense counsel proposed a stipulation and order to Plaintiffs' counsel to avoid the necessity of filing this motion, but she refused to enter into the stipulation. (See Attachment 4).

WHEREFORE, Defendants respectfully request that this Court enter an Order for Full Unconditional Dismissal with prejudice.

Respectfully submitted,

Michael A. Cox
Attorney General

Frank J. Monticello (P36693)
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, Michigan 48909
(517) 335-7021

Dated:  October 27, 2004

Monticello\1996052002A Nunn\Settle\Pldgs\Mot Full Dismissal

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA NUNN, et al,

      Plaintiffs,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al,

      Defendants.

Case No. 96-CV-71416-DT

Honorable John Corbett O'Meara

FILED
'04 OCT 28 P2:31
U.S. DIST. COURT
EAST DIST. MICH.
DETROIT

---

Deborah A. LaBelle  (P31595)
Attorney for Plaintiffs
Suite 300
221 N. Main Street
Ann Arbor, Michigan  48104
(734) 996-5620

Frank J. Monticello  (P36693)
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, Michigan  48909
(517) 335-7021

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR FULL UNCONDITIONAL DISMISSAL PURSUANT TO THE FEBRUARY 19, 2003 STIPULATION BETWEEN THE PARTIES

      Defendants rely upon the Stipulation for Partial Unconditional Dismissal and Order filed

in this Court on February 19, 2003 (see Attachment 1 to Defendants' Motion) and the Final

Report of the Compliance Expert (see Attachment 3 to Defendants' Motion). As noted in the

Defendants' Motion for Full Unconditional Dismissal, the Stipulation specifically provides that

the portion of the Agreement that remained opened after February 19, 2003 "remains subject to

compliance monitoring for a period **not to exceed twelve months.**" Nineteen months have

passed since that Order was filed. Since the parties agreed that this case was to close after

twelve months, it should now be dismissed in its entirety.

WHEREFORE, Defendants respectfully request that this Court enter an Order for Full

Unconditional Dismissal, with prejudice.

Respectfully submitted,

Michael A. Cox
Attorney General

Frank J. Monticello  (P36693)
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
Lansing, Michigan 48909
(517) 335-7021

Dated:  October 27, 2004

Monticello\1996052002A Nunn\Settle\Pldgs\Brf Supp Mot Full Dismissal

2



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ATTORNEY GENERAL
CORRECTIONS DIVISION

FEB 2 0 2003

ASSIGNED TO:

LINDA NUNN, et. al.,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et. al.,

    Defendants.

_____/

Case No. 96-CV-71416-DT
Honorable John Corbett O'Meara

FILED

FEB 1 9 2003
CLERK
U.S. DIST
EASTE

## STIPULATION FOR PARTIAL UNCONDITIONAL DISMISSAL

    The parties entered into a Settlement Agreement (hereinafter the "Agreement") in July

2000 calling for Defendants' substantial compliance with the terms of the Agreement, and

evaluation of compliance efforts by an independent compliance expert. Based on the Agreement

and the stipulation of the parties, the Court entered an order of conditional dismissal on August

17, 2000. On December 5, 2002, the compliance expert submitted a final report concluding that

the Defendants have substantially complied with all of the requirements of the Agreement.

However, because Defendants are continuing their efforts to staff housing units with female

officers pursuant to part IX(A) of the Agreement, that portion of the Agreement remains subject

to compliance monitoring for a period not to exceed twelve months.

    Therefore, pursuant to the Agreement, the parties move for entry of an Order

unconditionally dismissing with prejudice all aspects of this action pertaining to the Michigan

Department of Corrections, Kenneth McGinnis, Director of Michigan Department of

Corrections, Joan Yukins, Sally Langley, Terri Huffman, Carol Howes, Robert Salis, Cornell

Howard, Roderick Robey, Stanley Dorn, Erwin Richardson, Leroy Watson, Roosevelt

McCombs, Gerald Simmons, Anthony Norris, John Derrickson, Thomas Hauk, Burke

1

Cunningham, Harry Herrington, Maurice Steward, and Ronald Butters, except that portion of the Agreement related to staffing housing units with female officers. The parties also respectfully request that the Court continue the case on its inactive docket while retaining jurisdiction over the remainder of the case until final unconditional dismissal is entered. Nothing in this Agreement shall prevent Plaintiffs from pursuing judgments of default or from collecting judgments from the remaining Defendants.

_____
Deborah LaBelle (P31595) w/permission
Molly H. Reno (P28997)
Attorney for Plaintiffs
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 996-5620

_____
Mark Matus (P36659)
Assistant Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7021

Matus\1996052002A Nunn\Pldgs\Stip Partial Dismissal 010303

2



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA NUNN, et. al.,

   Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et. al.,

   Defendants.
_____/

Case No. 96-CV-71416-DT
Honorable John Corbett O'Meara



FILED

FEB 1 2003

U
EASTERN MICHIGAN

## <u>ORDER</u>

Having read and considered the parties' Stipulation for Partial Unconditional Dismissal,
and good cause appearing therefore, the Court hereby unconditionally dismisses with prejudice
all aspects of this action pertaining to the Michigan Department of Corrections, Kenneth
McGinnis, Director of Michigan Department of Corrections, Joan Yukins, Sally Langley, Terri
Huffman, Carol Howes, Robert Salis, Cornell Howard, Roderick Robey, Stanley Dorn, Erwin
Richardson, Leroy Watson, Roosevelt McCombs, Gerald Simmons, Anthony Norris, John
Derrickson, Thomas Hauk, Burke Cunningham, Harry Herrington, Maurice Steward, and Ronald
Butters, except that portion of the Agreement, Part IX(A), related to staffing housing units with
female officers. Nothing in this Order shall prevent Plaintiffs from pursuing judgments of
default or collecting judgments from the remaining Defendants.

IT IS ORDERED that the Clerk of the Court shall place this case on inactive status, and
is directed to notify the parties of entry of this Order.

_____
United States District Judge

Matus\1996052002A Nunn\Order Partial Dismissal 010303

3

*Linda Nunn, et al, Plaintiffs,*

*v.*

*Michigan Department of Corrections, et al, Defendants*
(USDC-ES No. 96-CV-71416-DT)

SETTLEMENT AGREEMENT
## Final Report of the Compliance Expert

### Summary

This report provides the compliance expert's assessment of the Michigan Department of Corrections' (MDOC) compliance with the provisions of the Settlement Agreement, which was incorporated into the Court's Order of August 17, 2000. The Settlement Agreement required the MDOC to implement a wide range of initiatives aimed at rooting out sexual misconduct, sexual harassment, and retaliation in the women's facilities.

The facilities now covered by the Settlement Agreement include the Scott Correctional Facility, the Western Wayne Correctional Facility, Camp Brighton, and the Grand Rapids Corrections Center. The Pontiac Corrections Center was originally included in the Agreement but has since been closed. Also, the Florence Crane Facility and Camp Branch no longer house women and are, therefore, subject to the Agreement only to the extent that there may be unresolved issues arising from their former status as women's prisons.

This report follows the organization and numbering of the Settlement Agreement.

Section I of the Settlement Agreement provides definitions, and Sections XIII through XV deal with procedural issues relating to the Agreement itself. Section XIII also describes the role and functions of the compliance expert, which includes the preparation of two reports, an interim report midway through the monitoring period and this final report.

Sections II through XIII of this report describe the MDOC's compliance with the specific, substantive requirements of the Settlement Agreement. The reader will note that the compliance expert finds the MDOC to be in substantial compliance with the requirements of each of the substantive sections of the Settlement Agreement. Nonetheless, the Settlement Agreement provides for a temporary and limited extension of the monitoring period. Please see Section IX. A. of the Settlement Agreement and the "Comments" in Section IX of this report.

After reviewing the provisions of the Settlement Agreement and carefully considering the information gathered during the monitoring period and the written documentation provided, the compliance expert finds the Michigan Department of Corrections to be in substantial compliance with the terms of the Settlement Agreement cited in the Court's Order of conditional dismissal, dated August 17, 2000.

The remainder of this report addresses the specific requirements of Section II through XIII of the Settlement Agreement. Some compliance indicators will be listed in each section.

## Section II.  POLICIES AND PROCEDURES PROHIBITING SEXUAL MISCONDUCT

*The MDOC was required to develop a single policy which covered the prohibitions against sexual misconduct, sexual harassment, and retaliation and which described reporting mechanisms, investigation procedures, and discipline concerning the prohibited behaviors included in the Agreement. The policy was also to describe the related counseling and education available to prisoners.*

### Compliance Indicator:

Policy Directive 03.03.140, (PROHIBITED CONDUCT IN FACILITIES HOUSING FEMALE PRISONERS), was promulgated on December 11, 2000, and remains in effect. It covers all of the areas required by the Settlement Agreement and was issued in a timely fashion.

## STATUS: Compliance

2

## Section III.  SCREENING OF JOB APPLICANTS AND CURRENT STAFF

*This section requires that a number of specific background checks and inquiries be conducted before a staff person is assigned to a position involving contact with prisoners.  In addition, the MDOC must perform LEIN (Law Enforcement Information Network) checks regarding criminal history and protective order information for all staff every five years, and must develop written procedures for staff placement in contact positions.*

## Compliance Indicators

Policy Directive 03.03.140, especially Paragraph L, M, N, O, P, and Q.

Policy Directive 02.06.111 regarding employee screening and evaluation.

Policy Directive 02.06.110 regarding controlled substance testing

8/28/00 Memorandum from Administrator Bauman to Deputy Director Bolden re: criminal history checks

11/05/00 Memorandum from Bauman to Deputy Director Steinman re: criminal history checks

02/26/01 Memorandum from Personnel Director Manns to Special Administrator Nancy Zang re: audit results of pre-employment hiring practices at Crane, Scott and Western Wayne.

03/26/01 Memorandum from Zang to Warden Stovall re: personnel audit.

04/30/01 Memorandum from Director Martin to Steinman and Bauman re: criminal history checks

06/29/01 Memorandum from Zang to Yukins and Stovall Re: criminal history checks required by P.D. 03.03.140

07/23/0 Memorandum from Bauman to Bolden re: criminal history checks (SCF 5, 10, 15, or 20 year anniversary)

02/21/02  Memo from Bauman to Bolden re: criminal history check (SCF: transferring employees)

3

4/26/02   Memorandum from Manns to Zang re: audit results of pre-employment hiring practices

6/18/02   Memo from Lopez to Zang re: employment history verification for January 2002 transfers

7/8/02   Memorandum from Administrator Pitcher to Zang re: screening of contractual substance abuse and health care staff

7/26/02   Memo from Bauman to A/Deputy Director Johnson re:  criminal history checks (WCF: 5, 10, 15, and 20 year anniversaries.)

**STATUS:  Compliance.**

*Comment:* The information requested in the Interim Report has been provided.

## Section IV. STAFF TRAINING

## Sub-section A. Basic Training on Working with Prisoners

*The Settlement Agreement directed that an independent consultant, agreed to by the parties, review the existing curriculum and training materials, observe the training and, if necessary, make recommendations for changes or additions. Paula M. Schaefer was selected as the consultant on staff training and completed her work. A brief summary of her findings was included in the Interim report.*

## Compliance Indicators

Consultant's Report and Recommendations, April, 2001

"Critical Issues in Managing Women Offenders", Training schedules from July 2000, through May 2002 for the 40-hour training program for new hires and transfers into women's facilities.

4

2/1/02  Letter from N. Zang to compliance expert with enclosures describing "Critical Issues in Managing Women Prisoners, 2002 Update."(This is a four-hour, in-service update delivered as required training at Scott, Western Wayne and Camp Brighton.)

"Critical Issues in Managing Women Prisoners", Student evaluations and questions, February 8, 2002.

Minutes of Female Offender Training Advisory Council, held 2/4/02

## STATUS:  Compliance

**Comment:**  After useful discussions among the parties, the consultant and the compliance expert, the consultant's recommendations were accepted and modifications made sufficient to make a determination that there is substantial compliance with this section of the Settlement Agreement.

## Sub-section B.  Investigator Training

*The Settlement Agreement directs that an independent consultant, agreed to by the parties, will review the existing curriculum and training materials for facility staff responsible for investigating allegations of sexual misconduct, sexual harassment, or retaliation, will observe the training, and will, if necessary, make recommendations for changes or additions. John Sura was selected as the consultant on Investigator training and has completed his work.*

## Compliance Indicators

June 5, 2001, Consultant's Final Report and Recommendations

Investigating Complaints of Gender Based Misconduct
    Trainer's Manual, February 2002
    Participant's Manual, February 2002

5

Investigating Gender Based Misconduct
Objectives for Seminar, 03/06/02 to 03/08/02
Summary of participant evaluations for Seminar

**STATUS:  Compliance**


**Sub-section  B. 4.  Specialized Training for Medical and Mental Health Staff**

*The Settlement Agreement directs that an outside consultant with expertise in sexual assault intervention and crisis counseling provide specialized training for all facility medical and mental health staff who may receive a prisoner's complaint of sexual misconduct. The Violence Against Women Training Institute of Plymouth, Michigan, was selected as the consultant and has been providing the specialized training.*

Compliance Indicator

August 17, 2000;  "Domestic Violence and Sexual Violence Seminar." Presented by Violence Against Women Training Institute.

June 26, 2001: Specialized training for health care staff, provided by Violence Against Women Training Institute.

July 26, 2001: Participant Handbook, "Sexual Assault Specialized Training" provided for health care staff, Resident Unit Managers and Assistant Resident Unit Supervisors.

October 1, 2002:  Summary of participant evaluations, Domestic Violence and Sexual Assault Specialized Training conducted for medical and mental health care staff.

**STATUS:  Compliance**


**Section V.  Prisoner Education**

6

*The Settlement Agreement directs that an independent consultant, agreed to
by the parties, will review the existing training and related materials for prisoner
education, observe the prisoner education training and, if necessary, make
recommendations for changes or additions. Brenda Smith was selected as the
consultant on prisoner education and has completed her work.*

## Compliance Indicators

Consultant's Report and Recommendations, June 21, 2001

Schedule and dates of prisoner education classes, "Appropriate and
Inappropriate Staff and Prisoner Interaction ", from August of 2000 through
July of 2002

Prisoner evaluations of "Appropriate and Inappropriate Staff and Prisoner
Interaction", November and December 2002 and January 2003.

Revised Prisoner Brochure: *Identifying and Addressing Gender-Based
Misconduct, A Guide for Women Prisoners,* February 2002

Spanish Version, *Identifying and Addressing Gender-based Misconduct,*
February 2002

Forms for prisoner completion:
> Class Evaluation Form (no signature or number required)
> Clarification Request Form (requires signature, number and
> date)

*Identifying and Addressing Gender-Based Misconduct,* Instructor's Guide,
(Revised May 2002)

MDOC Field Operations Administration Brochure: *Identifying and
Addressing Gender-Based Misconduct, A Guide for Women Prisoners.*
April 2002 (addendum)

## STATUS:  Compliance

*Comment:* After useful discussions among the parties, the consultant and
the compliance expert, the consultant's recommendations were accepted and

7

modifications made sufficient to determine that the MDOC is in substantial compliance with this section of the Settlement Agreement.


## Section VI.  Consultants

*The Settlement Agreement makes provision for the consultants discussed above.*

## Compliance Indicators

The consultants were selected and contracts issued; they met with the parties and were provided with requested materials. The consultants have completed their work, submitted reports and recommendations, and the MDOC has borne the cost.

## STATUS:  Compliance

**Comment:**  Although there was resistance to some of the recommendations initially, the involvement of the consultants and their recommendations has been very helpful in moving toward compliance. The MDOC's cooperation in complying with this section of the Agreement was equally important


## Section VII.  PREVENTION OF PROHIBITED CONDUCT

*This report will address separately each of the three topics in this section.*

## Sub-section A.  Minimization of One on One Situations

*The Settlement Agreement requires a written procedure restricting male staff from being alone with female prisoners in one- on- one situations where they are not clearly visible to others.  It notes some exceptions.*

## Compliance Indicators

Policy Directive 03.03.140, Paragraph II

8

Memoranda from wardens or managers at all covered facilities re: minimization of one-on-one situations

Verification from wardens of each CFA facility and the FOA Deputy Director that operating procedures supporting that policy are in place.

## STATUS: Compliance

## Sub-section B. Minimization of Access to Secluded Areas

*The Settlement Agreement directs that MDOC will take reasonable measures to eliminate prisoner access to areas that are not necessary for the operation of the facility or center. Since these secluded areas are peculiar to each facility, the compliance determination was made separately for each facility.*

SCOTT CORRECTIONAL FACILITY: Many physical plant modifications were made at Scott in order to bring it into compliance with similar requirements of the USA v. MDOC settlement agreement. The compliance expert's inspections in this case confirm that those modifications remain in place, along with operating procedures that provide for compliance with the requirements of this Section.

STATUS: Compliance

WESTERN WAYNE CORRECTIONAL FACILITY: The compliance expert's inspections confirm that the physical plant changes necessary to come into compliance with this Section have been completed. Corresponding operational procedures are also in place

STATUS: Compliance

CAMP BRIGHTON: The new construction and re-modeling at Camp Brighton have been responsive to the concerns raised in the Section and, therefore, the facility is in compliance.

STATUS: Compliance

GRAND RAPIDS CORRECTIONS CENTER: The proposed modifications to the Grand Rapids Center, which were described in the compliance expert's *Interim Report*, have been accomplished. Recent inspections confirm that those physical plant changes remain in place along with operating procedures necessary to sustain compliance with this Section.

STATUS:  Compliance

PONTIAC CORRECTIONS CENTER:  Since the *Interim Report*, the Pontiac Corrections Center has been closed and no longer houses MDOC prisoners.

## Sub-section C.  Sexual Misconduct Files

*The Settlement Agreement requires that the MDOC maintain a tracking system to store allegations and information relating to prohibited behavior and that data in the system be retrievable by  using a number of key identifying characteristics.  It also requires that the system be queried prior to accepting rehires, and that quarterly searches of the system will trigger certain responses to existing staff, if appropriate.*

## Compliance Indicators

Policy Directive 03.03.140, Paragraph CC.   And D.D.

Reports generated from the AIPAS automated tracking system for the period from August 1, 2000, through the present.

Random queries of AIPAS to assess the system's ability to match verified information obtained from other sources.

Results of quarterly search of the tracking system for staff member with more than two gender-based misconduct allegations, April 25, 2002

Gender-Based Misconduct Analysis, by Dr, Carole Rankin, August 28, 2002.

10

## STATUS:  Compliance

***Comment***:  The AIPAS tracking system has been in operation for the entire monitoring period of this Settlement Agreement. The system has proven its value during this monitoring period and can continue to provide MDOC with information necessary to head off problems like the ones that led to this litigation.  The compliance expert is satisfied that the tracking system contains reliable and valuable information for managers wise enough to use it.

## VIII.  PAT DOWN SEARCHES

*Absent exigent circumstances, the Agreement allows pat down searches of female prisoners by female officers only during an evaluation period.*

Compliance Indicators:

Policy Directive 03.03.140, Paragraph MM.

11/06/00: memorandum from Glen Gomery to all staff and prisoners (Grand Rapids) re: pat down and clothed body searches

## STATUS:  Compliance

***Comment:*** The policy and practice continues of having only female officers conduct pat down searches of female prisoners.

## Section IX:  STAFFING ISSUES

*The Settlement Agreement requires the MDOC to make a good faith effort to limit the assignment of staff in facility housing units to female officers.  It also requires a "knock and announce" policy, the logging in of male officers who enter housing units, the assignment of at least one female*

11

*officer to transport female prisoners, and provisions for maintaining
prisoner privacy on medical runs and during showering, dressing, and using
the toilet.*

Compliance Indicators:

Policy Directive 03.03.140, Paragraphs KK., LL., NN., and PP.

AIPAS reports documenting status of (Category 17) grievances.

*Roslyn Everson, et al. v MDOC, et al.*  USDC-ES Case No. 00-73133

**STATUS: Compliance**

**Comment:** During the monitoring period, the MDOC has continued
to make a good faith effort to limit the assignment of staff in facility housing
units to female officers. Their position in the *Everson* case, cited above, is
consistent with that announced intention. Since *Everson* is currently on
appeal to the Sixth Circuit, the MDOC's efforts are ongoing and, therefore,
the monitoring will be extended as to this issue only for not more than two
additional sixth month periods.

**Section X:  FACILITATION OF PRISONER AND STAFF
REPORTING OF ALLEGATIONS OF SEXUAL MISCONDUCT,
SEXUAL HARASSMENT AND RETALIATION**

*In order to encourage prisoners to report prohibited conduct, this
section of the Agreement provides for the placement of a limited access,
locked box at the facilities and centers for confidential written reports, and
requires the MDOC to take other reasonable steps to ensure that staff and
prisoners maintain the confidentiality of anyone who reports such
misconduct.  It also prohibits retaliation against anyone for reporting
prohibited conduct and provides for the establishment and operation of a
Retaliation Review Committee at each facility.  Placing prisoners in
involuntary protective custody simply because they reported conduct
prohibited by the Agreement is also forbidden, as is issuing a misconduct to
a prisoner for filing an unsustained complaint unless it is shown that the
complaint was intentionally false.*

12

## Compliance Indicators:

Policy Directive 03.03.140, Paragraphs S. (locked box), BB. (confidentiality of reports), EE., FF., GG., HH. (Retaliation Review Committee) and U. (unfounded accusations).

Memoranda from Warden Yukins to ADW Bruce (10/05/00), from Warden Stovall to ADW Chapman (11/07/00), and from Warden Langley to Those Concerned (11/07/00) establishing the Retaliation Review Committees.

Retaliation Review Committees. Summaries of meetings for Scott and Western Wayne, 2001 –2002

11/06/00: memorandum from Gomery (Grand Rapids) regarding the facilitation of prisoner reporting of allegations.

11/07/00 memorandum from Stovall to all staff conducting sexual misconduct investigations, regarding confidentiality statements.

Gender Based Misconduct Prisoner Mail Logs; prisoner correspondence to Special Administrator regarding alleged Gender-based misconduct. August 1, 2000 through June 4, 2002

## STATUS: Compliance

## XI. INVESTIGATION OF ALLEGATIONS

*In this section, the Agreement requires that the MDOC conduct timely, complete, thorough, documented and uniform investigations of all allegations of prohibited conduct, however received. It further requires that the investigations be consistent with the training issues considered in Section IV.B. of the Agreement. Section XI also requires referral of alleged criminal sexual misconduct to the Michigan State Police, face-to-face interviews of suspects, victims, and witnesses and staff cooperation in all investigations. It further requires that investigations must be completed*

even if an accused staff person resigns or is fired, and has a provision for reviewing certain previous allegations using current investigative standards. The practice of removing accused staff from physical contact with prisoners pending investigation is to be maintained, and all investigations will include a search for prior allegations and investigations. Finally, the Agreement requires that a prisoner at a facility, who has reported sexual misconduct by staff, will have an opportunity to speak with a trained counselor prior to being interviewed by an investigator and have the counselor present during the interview.

## Compliance indicators:

Policy Directive 03.03.140
Paragraph V. (investigations), Paragraph W. (personal interviews and prior allegations), Paragraph X. (access to counselor)
Paragraph Y. (MSP referrals), Paragraph Z. (continuing investigations), Paragraph AA. (staff cooperation and removal of accused staff from contact).

Policy Directive 02.03.100 "Employee Discipline"

Master Listing: Gender-Based Misconduct Investigations, 08/01/00 to 06/30/02

"Investigating Complaints of Gender-Based Misconduct", Participant's Manual, February 2002
Trainer's Manual. February 2002

Sexual misconduct investigation files

## STATUS: Compliance

## XII RESPONSE TO SUSTAINED MISCONDUCT

This section addresses discipline for staff when allegations of prohibited conduct are sustained, or when resignation occurs during an investigation or in lieu of discipline. It also provides for psychological services for prisoners who have been subject to sexual misconduct with staff.

14

Compliance Indicators:

    Policy Directive 02.03.100 "Employee Discipline"

    P.D. 01.01.140 "Internal Affairs"

    Policy Directive 03.03.140

    Policy Directive 04.06.180, "Mental Health Services"

    Sexual misconduct investigation files

**STATUS:  Compliance**

Submitted December 3, 2002

Patrick D. McManus
Compliance Expert



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA NUNN, et. al.,

       Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et. al.,

       Defendants.

_____/

Case No. 96-CV-71416-DT
Honorable John Corbett O'Meara

## **STIPULATION FOR ENTRY OF FULL UNCONDITIONAL DISMISSAL**

The parties, through their attorneys, stipulate and agree to the following:

1.     This Court entered an Order to place this case on inactive status on February 19, 2003, pursuant to the parties Stipulation for Partial Unconditional Dismissal.

2.     The parties' Stipulation for Partial Unconditional Dismissal (attached) provided that compliance monitoring would continue for a period not to exceed twelve months on the Defendants' efforts to staff housing units with female officers pursuant to part IX(A) of the Settlement Agreement.

3.     Oral argument in *Everson v Michigan Dept. of Correction,s et. al.*, Sixth Circuit Court of Appeals Nos. 02-2028; 02-2033; 02-2084, took place on February 4, 2003, and the parties are awaiting the Court's decision. The essential issue before the Sixth Circuit is whether the District Court erroneously determined that there was no justification for a blanket ban on employment of male corrections officers in the female prisons in Michigan.

4.     Twelve months have passed since the parties signed the Stipulation for Partial
Unconditional Dismissal.  Thus, this case should be dismissed completely and unconditionally as
set forth in the attached Order of Dismissal.


_____                    _____
Deborah LaBelle (P31595)                       Frank J. Monticello  (P36693)
Molly H. Reno (P28997)                         Assistant Attorney General
Attorney for Plaintiffs                        Corrections Division
221 North Main Street, Suite 300               P.O. Box 30217
Ann Arbor, MI 48104                            Lansing, MI 48909
(734) 996-5620                                 (517) 335-7021

Date:_____                    Date:_____


Matus\1996052002A Nunn\Pldgs\Stip Full Dismissal 100804

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA NUNN, et. al.,

      Plaintiff,

                                    Case No. 96-CV-71416-DT
                                    Honorable John Corbett O'Meara

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et. al.,

      Defendants.

_____/

### ORDER OF DISMISSAL

    Having read and considered the parties' Stipulation for Full Unconditional Dismissal with

prejudice; IT IS ORDERED that this case is DISMISSED in its entirety with prejudice.


                                         _____
                                         United States District Judge

Matus\1996052002A Nunn\Order of Dismissal 100804